SO ORDERED: November 16, 2018.



_____
Jeffrey J. Graham
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MATTHEW RICHARD ROTH, | ) | Case No. 17-04109-JJG-7 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| MATTHEW RICHARD ROTH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 18-50097 |
| | ) | |
| BUTLER UNIVERSITY, | ) | |
| DISCOVER FINANCIAL SERVICES, | ) | |
|  INC., and | ) | |
| SALLIE MAE BANK, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER DENYING MOTION TO COMPEL ARBITRATION
AND DISMISS OR STAY PENDING ARBITRATION**

The motion before the Court asks if an arbitration clause in a student loan contract is enforceable in the context of a dischargeability action.  For the reasons stated below, the Court answers that question in the negative.

JURISDICTION

Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The issue of whether a debt is dischargeable is a core matter pursuant to 28 U.S.C. § 157(b)(2)(I). Both parties consent to this Court's entry of final orders or judgments. *See Wellness Int'l Network, Ltd. V. Sharif,* -- U.S. --,125 S.Ct. 1932, 191 L.Ed.2d 911 (2015). The Court, at least initially, has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334, subject to the determination of whether the arbitration agreement removes this matter from the Court's bailiwick.

BACKGROUND

Plaintiff/Debtor Matthew Richard Roth ("Roth") attended Butler University in Indianapolis, Indiana. While attending Butler, Roth obtained a student loan in the amount of $32,800 from Defendant Sallie Mae Bank ("Sallie Mae"). Roth's promissory note with Sallie Mae contained an arbitration provision that allowed either party to elect to arbitrate any claim arising under the note, including "the imposition or collection of principal, interest, attorneys' fees, collection costs or other fees or charges relating to this Note[.]"

Roth filed a chapter 7 bankruptcy and scheduled a debt to Sallie Mae in the amount of $36,927.88. Roth received a discharge and his case was closed. Roth later moved to reopen his case and filed *Plaintiff Matthew Roth's Amended Complaint Regarding Dischargeability of "Private" Student Loans* (the "Amended Complaint"), seeking to discharge his student loan debt to Sallie Mae (among other lenders) pursuant to 11 U.S.C § 523(a)(8). Specifically, Roth alleges that his loan

2

with Sallie Mae is not a "qualified educational loan" and, alternatively, that the loan debt should be discharged as its repayment constitutes an undue hardship.

In lieu of an answer Sallie Mae filed its *Motion to Compel Arbitration and Dismiss or Stay Pending Arbitration* (the "Motion to Compel"). In the Motion to Compel, Sallie Mae argues that the Court should compel arbitration of the Amended Complaint in compliance with the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 2-3, and dismiss the claims against Sallie Mae for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), made applicable to this proceeding pursuant to Federal Rule of Bankruptcy Procedure 7012. Alternatively, Sallie Mae asks the Court to stay Roth's claims as to Sallie Mae to allow an arbitrator to decide the issues.

Roth counters by arguing that the promissory note's arbitration provisions are critically vague and unenforceable. Roth further argues that the Court should deny arbitration because the proceeding involves a core matter and that a debtor's discharge is a matter of paramount concern for the bankruptcy court. For the purposes of this opinion, the Court will assume that the promissory note's arbitration provision is clear and enforceable, focusing instead on the question of whether the Roth's claims against Sallie Mae should be subject to arbitration.

## DISCUSSION

Roth and Sallie Mae contractually agreed to arbitrate issues regarding claims relating to the promissory note. The FAA, 9 U.S.C. §§ 1 *et seq.*, places arbitration agreements on equal ground with other contractual provisions and makes them

3

valid, irrevocable and enforceable absent some contrary legal or equitable ground for revocation. *Epic Sys. Corp. v. Lewis*, -- U.S. --, 138 S.Ct. 1612, 1622 (2018). The Supreme Court has read the FAA as establishing "a liberal federal policy favoring arbitration agreements." *Id.* (citations omitted). Furthermore, courts are to "rigorously enforce agreements to arbitrate." *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987). This is true even when the claims at issue are statutory rights. *Id.*

The Supreme Court's decision in *Epic* is the most recent case to explore the alleged conflict between the FAA and another federal statute. There, the Supreme Court was asked to determine if the Fair Labor Standards Act and the National Labor Relations Act overrode an arbitration agreement. When reviewing an alleged conflict between the FAA on the one hand and the FLSA and NLRA on the other, the Supreme Court noted that the party asserting a conflict "bears a heaving burden of showing "a clearly expressed congressional intention' that such a result should follow" and that there is a "'stron[g] presum[ption]' that repeals by implication are 'disfavored' and that 'Congress will specifically address' preexisting law when it wishes to suspend its normal operations in a later statute." *Id.* at 1624 (citations omitted). Moreover, the language must be "clear and manifest" for the FAA's mandate to arbitrate to be overridden. *Id.*

Sallie Mae points to the language in *Epic* and notes that nothing in § 523 of the Bankruptcy Code contains a clear and manifest Congressional intent to override an agreement to arbitrate. Were *Epic* the only Supreme Court to case to address

4

the interplay of federal statutes and the FAA, Sallie Mae might prevail. But *Epic* does not stand alone on this issue.

In 1987 the Supreme Court tackled the issue of whether the Securities Exchange Act and the Racketeer Influenced and Corrupt Organizations Act rendered a matter non-arbitrable in *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220 (1987). Acknowledging that the FAA mandated the enforcement of arbitration agreements, the Supreme Court held that "[l]ike any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command." *Id.* at 226. The Supreme Court then set forth a test for determining whether a contrary congressional command existed: (1) the statute's text; (2) the statute's legislative history; or (3) an inherent conflict between arbitration and the statute's underlying purpose. *Id.* at 227.

This approach makes sense. The FAA was intended to put arbitration agreements "upon the same footing as other contracts." *McMahon*, 482 U.S. at 225-26 (citations omitted); *see also Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989) (FAA "simply requires courts to enforce privately negotiated settlements to arbitrate, like other contracts, in accordance with their terms."). But the FAA did not make arbitration agreements more enforceable than other contracts. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967) *and In re Brown*, 354 B.R. 591, 600 (D.R.I. 2006). Similarly, arbitration agreements have been held akin to contractual forum selection clauses,

5

privately negotiated provisions meant to be enforced according to their terms. *Id.* (collecting cases).

Federal bankruptcy law also is a fundamental public policy, one that is grounded in the Constitution. *Moses v. CashCall, Inc.*, 781 F.3d 63, 72 (4th Cir. 2015). The very purpose of the Bankruptcy Code is to modify the rights – contractual and otherwise – of debtors and creditors. *See In re D&B Swine Farms, Inc.*, 430 B.R. 737, 744 (Bankr. E.D.N.C. 2010). So it should come as no surprise that a bankruptcy court could, in certain circumstances, override a contractual agreement such as an arbitration provision or a forum selection clause. *See In re Anderson*, 884 F.3d 382 (2d Cir. 2018) (upholding decision not to enforce arbitration provision) *and In re Dozier Fin., Inc.*, Adv. Pro. No. 17-80113-HB, 2018 WL 2386812 (Bankr. D.S.C. May 24, 2018) (declining to enforce a forum selection clause in adversary proceeding). The *McMahon* framework provides a way for courts to balance the competing public policies of enforcing arbitration agreements and bankruptcy court's ability to alter the contractual rights of debtors and creditors. To take away this framework and rely solely on an explicit textual override would elevate arbitration agreements over other contractual provisions and unfairly diminish the Bankruptcy Code.

The High Court's decision in *McMahon* has never been overruled, and in fact the case was cited in the *Epic* decision. Supreme Court precedent is only overruled after "appropriate consideration and clarity[.]" *In re Williams*, 564 B.R. 770, 777 (Bankr. S.D. Fla. 2017) (collecting cases). Because *Epic* is silent as to any attempt

6

to overrule *McMahon*, the Court will treat *McMahon* as good law and will apply it to the matter at hand. *See In re Golden*, 587 B.R. 414, 424 (Bankr. E.D.N.Y. 2018) (applying *McMahon* after *Epic* was decided).

No appellate court has found that either the text of the Bankruptcy Code or its legislative history suggests that Congress intended to have the Bankruptcy Code override the FAA. *In re Eber*, 687 F.3d 1123, 1129 (9th Cir. 2012) (collecting cases). The analysis therefore hinges on a single question: whether arbitration would create an inherent conflict with the purposes of the Bankruptcy Code. *Id.*

Although the Seventh Circuit has yet to opine on this issue, several Courts of Appeals have tackled *McMahon*'s inherent conflict inquiry. Most courts have held that bankruptcy courts have discretion to decline arbitration if the matter is a core proceeding and arbitration would frustrate or conflict with the purposes of the Bankruptcy Code. *See Anderson*, 884 F.3d at 387; *In re EPD Inv. Co., LLC*, 821 F.3d 1146, 1150 (9th Cir. 2016); *Whiting-Turner Contracting Corp. v. Elec. Mach. Enters. Inc.*, 479 F.3d 791, 796 (11th Cir. 2007); *In re White Mountain Mining Co., L.L.C.*, 403 F.3d 164, 169 (4th Cir. 2005); *but see In re Mintze*, 434 F.3d 222, 229 (3rd Cir. 2006) (focusing not on core vs. non-core but instead whether the matter was a statutory right under the Bankruptcy Code).

The issues subject to arbitration here are: (1) whether Roth's loan with Sallie Mae is a qualified educational loan under § 523(a)(8) of the Bankruptcy Code; and (2) if so, whether such loan may be discharged as an undue hardship under § 523(a)(8). Both issues are included in the text of the Bankruptcy Code, satisfying

7

*Mintze*. The issue of dischargeability is a core proceeding under 28 U.S.C. § 157(b)(2)(I), thereby satisfying *Anderson* and related cases. The Court therefore has the discretion to not enforce the promissory note's arbitration provision if it finds arbitration would conflict with the purposes and policies of the Bankruptcy Code under any test utilized by the various Courts of Appeals.[1]

Sallie Mae argues that there is no inherent conflict present here, pointing to *Williams* as support. There, the debtor sought to avoid arbitration of claims under §§ 523(a)(8) and 524(a)(2) of the Bankruptcy Code. The court enforced the arbitration provision at issue, reasoning that there was no inherent conflict with the Bankruptcy Code as: (1) the debtor had already received a discharge; (2) arbitration would not interfere or affect distribution of the estate or an ongoing reorganization; (3) there was no interference with the preservation of estate assets or the determination of the priority of claims; and (4) the debtor was asserting claims on behalf of a class action. *Williams*, 565 B.R. at 783. Sallie Mae points out that Roth has received his discharge, that this is a chapter 7 liquidation with no reorganization, and that resolution of the claim will not affect estate assets. This, Sallie Mae posits, shows there is no conflict with the Bankruptcy Code and that the arbitration provision should be enforced.

Roth counters by arguing that the Court should follow the reasoning employed in *Golden* and find an inherent conflict exists. Similar to *Williams*, the court in *Golden* had to determine whether claims brought under §§ 523(a)(8) and

---

[1] The Court specifically reserves any decision as to whether a different result would occur if the matter at issue were a non-core proceeding.

8

524 of the Bankruptcy Code should be subject to arbitration.  Unlike *Williams*, the court in *Golden* found that arbitrating claims under those sections did create in inherent conflict with the Bankruptcy Code because:  (1) the fundamental purpose of bankruptcy law was to give debtors a fresh start and that purpose was impeded by arbitrating potential violations of discharge; and (2) Congress specifically allowed bankruptcy courts the power to enforce their own orders and arbitrating violations of the discharge injunction impeded that goal.  *Golden*, 587 B.R. at 427-28.

      The Court, having considered the issue, believes that *Golden* contains the sounder reasoning of the two cases put forth by the parties.  The Supreme Court has recently reiterated that "[o]ne of the main purposes of the federal bankruptcy system is to aid the unfortunate debtor by giving him a fresh start[.]"  *Lamar, Archer & Cofrin, LLP v. Appling*, --U.S.--, 138 S.Ct. 1752, 1758 (2018) (citations omitted).  The primary tool for effectuating a debtor's fresh start is the discharge.  *Anderson*, 884 F.3d at 390.  Allowing an arbitrator to determine dischargeability creates an inherent conflict with the Bankruptcy Code because it would remove an essential function of bankruptcy law from bankruptcy courts.  *See Eber*, 687 F.3d at 1131 (allowing arbitrator to decide issues of dischargeability conflicts with the underlying purposes of the Bankruptcy Code) *and In re Koper*, 516 B.R. 707, 719 (Bankr. E.D.N.Y. 2014) (dischargeability of debt is an essential function of bankruptcy courts).  Really it is more than inherent conflict.  Allowing arbitration of dischargeabilty – the central purpose of the Bankruptcy Code according to *Anderson*

9

– would effectively allow parties to contractually overrule the application of federal bankruptcy law. Bankruptcy without the discharge is like a car without an engine; a useful tool rendered ineffective. The Court is unwilling to do that, and finds that the arbitration of dischargeability issues creates an inherent conflict with the Bankruptcy Code.

Another pillar of federal bankruptcy law is Congress' intention to centralize disputes about a debtor's legal obligations for prompt and efficient resolution in bankruptcy courts. *See Moses*, 781 F.3d at 72 *and White Mountain*, 403 F.3d at 169-170. Were Sallie Mae to prevail, Roth's claims against it would be decided by an arbitrator. However, Roth's claims against the other two defendants would be decided in this proceeding. Roth would have to argue undue hardship on the same set of facts in two forums, incur the cost of two separate proceedings, and face potentially different outcomes were the arbitrator and the Court to rule differently. This dual forum litigation would be inefficient, costly, and time consuming.

The Court finds that enforcing the arbitration of the claims presented by Roth would be inconsistent with the Bankruptcy Code's purpose of centralizing litigation before a bankruptcy court for efficient resolution.[2] *See Brown*, 453 B.R. at 603; *see also Moses*, 781 F.3d at 73 (holding arbitration of a core claim is an inherent conflict with the purposes of the Bankruptcy Code).

---

[2] It is interesting that the *Williams* opinion – the decision on which Sallie Mae relies – notes that "[i]t seems doubtful that arbitration will present a more efficient resolution of the matter than continued litigation in this adversary proceeding." *Williams*, 564 B.R. at 784 n.3.

10

CONCLUSION

Based on the foregoing, the Court finds it has jurisdiction over Roth's claims against Sallie Mae.  Furthermore, the Court declines to enforce the arbitration agreement between Sallie Mae and Roth or stay this proceeding to allow such arbitration to go forward.  The Court does so because enforcement in this case would create an inherent conflict with the Bankruptcy Code's fundamental policies of affording debtors a fresh start and centralizing disputes about a debtor's obligations for efficient resolution.  The Court therefore SUSTAINS Roth's objection and DENIES the Motion to Compel in its entirety.

Having ruled on the Motion to Compel, the Court hereby dissolves the stay on all pending discovery imposed by the Court's Order dated September 7, 2018.  The Court will reschedule the pretrial conference on this adversary via separate order.

# # #